# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

K.S.D.,

      Plaintiff,

        v.

ERIC BRUCE RYAN, RODERICK
NEWBOLD RYAN, and SEWARD
JOHNSON RYAN,

      Defendants.

Civil Action No. 21-20270 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff K.S.D.'s Motion for Leave to File a Second Amended Complaint. (ECF No. 54.) Defendants Seward Johnson Ryan ("Seward") and Eric Bruce Ryan ("Eric") opposed, (ECF Nos. 56, 57), and Defendant Roderick Newbold Ryan ("Roderick") did not, (ECF No. 58). Plaintiff replied separately to Seward and Eric. (ECF Nos. 59, 60.) Also pending before the Court are Seward's and Eric's separate Motions to Dismiss, (ECF Nos. 45, 48), filed shortly before Plaintiff's Motion for Leave to File a Second Amended Complaint. The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion to Amend (ECF No. 54) is **GRANTED**. Seward's Motion to Dismiss (ECF No. 45) and Eric's Motion to Dismiss (ECF No. 48) are **DENIED** as moot.

# I.    **BACKGROUND**

## A.    FACTUAL BACKGROUND [1]

This matter arises from the alleged sexual abuse of Plaintiff by her four adult stepbrothers—Eric Bruce Ryan, Seward Johnson Ryan, Roderick Newbold Ryan, and Hillary Armstrong Ryan ("Hillary")—when Plaintiff was a child in the 1970s. Plaintiff's father married the four brothers' mother in June of 1972, shortly after Plaintiff's thirteenth birthday. (PSAC ¶¶ 1, 3.) At that time, Eric was approximately twenty-one (21) years old, Seward was twenty (20) years old, Roderick was eighteen (18) years old, and Hillary was approximately seventeen (17) years old. (*Id.* ¶¶ 4–7.) Throughout the duration of the parents' marriage, from 1972 to 1976, Plaintiff and her stepbrothers resided, on a regular basis, at a house in Far Hills, New Jersey. (*Id.* ¶¶ 8–10.)[2]

Plaintiff alleges that between 1972 and 1976, each of the stepbrothers committed various sexual offenses against Plaintiff. The PSAC alleges that the sexual abuse and rape began in June and July of 1972, when Plaintiff was thirteen (13) years old. (PSAC ¶¶ 3, 13–15.) That summer, Seward kissed Plaintiff on the lips, which Plaintiff alleges was "an initial step in grooming her as a sexual object for the Defendants." (*Id.* ¶ 11.) Around that same time, Seward, Roderick, and their acquaintance, played a "game" with Plaintiff in which each of the participants removed articles of clothing. (*Id.* ¶ 12.) Seward and Roderick required Plaintiff to remove her shirt and expose her breasts and prevented her from covering herself. (*Id.*) Seward was the oldest person present, and afterwards left Plaintiff alone with Roderick, at which point Roderick performed oral sex on

---

[1] The facts set forth in this Opinion are taken from Plaintiff's Proposed Second Amended Complaint ("PSAC"). (ECF No. 54-2.) For purposes of deciding Plaintiff's Motion for Leave to File a Second Amended Complaint and, where necessary, deciding Defendants' Motions to Dismiss, the Court assumes the facts alleged in the PSAC are true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] Plaintiff initially filed suit against all four stepbrothers, (ECF No. 1), but voluntarily dismissed her claims against the youngest, Hillary, before filing the PSAC, (ECF No. 35). Eric, Seward, and Roderick remain in the suit.

Plaintiff. (*Id.* ¶¶ 12–13.) That night, and in subsequent encounters that occurred between September 1972 and June of 1973, Roderick penetrated Plaintiff's vagina with his fingers and touched her breasts beneath her shirt. (*Id.* ¶¶ 14–16, 19.) During one of these instances, Roderick told Plaintiff that they needed to stick together as the "black sheep" of the family, which Plaintiff contends was another instance of "grooming." (*Id.* ¶ 19.)

During the summer of 1972, Hillary penetrated Plaintiff's vagina with his penis. (*Id.* ¶ 15.) Hillary continued to penetrate Plaintiff's vagina with his penis on "countless" occasions between 1973 and March of 1976, after Hillary had turned 18 and while Plaintiff was still under 18. (*Id.* ¶¶ 17–18, 20–22.) Hillary did not use contraception, which led to Plaintiff's pregnancy and subsequent abortion during the winter of 1974, at the age of fifteen (15) years old. (*Id.* ¶ 21.) On or about March 14, 1976, Eric penetrated Plaintiff's vagina with his fingers while giving her a back massage in his New York, New York apartment. (*Id.* ¶ 23.)

While Defendants and their parents knew about the "romantic relationship" between Hillary and Plaintiff, "[a]t no time did anyone attempt to prevent Hillary or any of the other Defendants from sexually abusing [Plaintiff.]" (*Id.* ¶ 22.) Plaintiff alleges that these instances of ongoing sexual abuse resulted in long-lasting emotional trauma and fear, affecting Plaintiff's ability to earn a consistent income or form healthy romantic relationships. (*Id.* ¶¶ 24, 26–27.) Plaintiff further alleges that she was unaware of and unable to fully understand what constituted sexual assault or abuse until she engaged in therapy in or about 1993. (*Id.* ¶¶ 29, 47.)

The PSAC asserts, as against all Defendants—Seward, Eric, and Roderick—claims for assault, (Count Two, PSAC ¶¶ 54–59); battery, (Count Three, *id.* ¶¶ 60–66); and intentional infliction of emotional distress, (Count Five, *id.* ¶¶ 72–78). Count Four claims false imprisonment as to Eric and Roderick. (*Id.* ¶¶ 67–71.) Count Six of the PSAC brings a claim for "endangering

the welfare of children" against Seward and Eric. (*Id.* ¶¶ 79–83.) Finally, Count One claims sexual battery and a violation of the Child Sexual Abuse Act ("CSAA"), N.J. Stat. Ann. § 2A:61B-1, against Roderick alone. (*Id.* ¶¶44–53.)

### B.    PROCEDURAL HISTORY

Plaintiff filed her initial Complaint against Defendants on November 30, 2021. (ECF No. 1.) All Defendants filed motions to dismiss the Complaint on April 27, 2022, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 21, 23–25.) In opposing Defendants' motions to dismiss, Plaintiff acknowledged a jurisdictional pleading error and attached a proposed amended complaint. (ECF No. 28-1.) On December 8, 2022, Plaintiff filed a notice of voluntary dismissal as against Hillary. (ECF No. 35.)

On December 13, 2022, the Honorable Zahid N. Quraishi dismissed Plaintiff's Complaint without prejudice based on the lack of complete diversity among the parties and the resulting lack of diversity jurisdiction. (ECF No. 37 at 6.) The Court's Opinion did not address Defendants' arguments that the Complaint failed to state a claim. (*See generally id.*) The Court granted Plaintiff leave to file an amended pleading, limited to remedying the jurisdictional defect identified in the Opinion, within fourteen (14) days. (*Id.*) Further amendment would require Plaintiff to "seek leave from the Magistrate Judge within 14 days to file a Motion to Amend her Complaint." (*Id.*)

On December 21, 2022, Plaintiff filed a First Amended Complaint ("FAC"), fixing the jurisdictional defect. (ECF No. 39.) On the same day, in accordance with the Court's Order, Plaintiff also filed a letter, styled as a motion, that sought leave to move to file a second amended pleading that would make substantive changes in response to Defendants' Rule 12(b)(6) arguments leveled against the Complaint. (ECF No. 40 at 2.) The three remaining Defendants—Roderick, Seward, and Eric—submitted a joint letter objecting to Plaintiff's request. (ECF No. 44.) Before

receiving a decision on Plaintiff's letter request, Roderick filed an Answer to the FAC, (ECF No. 46), and Seward and Eric filed separate Motions to Dismiss the FAC, (ECF Nos. 45 & 48).

On February 7, 2023—the day Plaintiff's opposition to the Motions to Dismiss were due—the Honorable Lois H. Goodman granted Plaintiff's request for leave to move to file a second amended complaint, ordering that the motion be filed no later than February 24, 2023. (ECF No. 52.) On that day, Plaintiff filed the instant Motion for Leave to File a Second Amended Complaint, (ECF No. 54), along with the PSAC, (ECF No. 54-2). The PSAC adds specificity to the pleading's statement of facts, particularly related to several Defendants' alleged acts of "grooming," (PSAC ¶¶ 11, 19); sexual acts committed by each Defendant, (*id.* ¶¶ 12–16, 20, 23); and Plaintiff's reasons for not bringing suit earlier, (*id.* ¶¶ 29–31). The PSAC also removed all Defendants from Count One except for Roderick, (*id.* ¶¶ 44–53), and added Seward to Count Six, the claim for "endangering the welfare of children," which previously had only been alleged against Eric, (*id.* ¶¶ 79–83).

## II.    <u>LEGAL STANDARD</u>

"The grant or denial of leave to amend is a matter committed to the sound discretion of the district court." *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendments are favored because, assuming the underlying facts "may be a proper subject for relief, [the plaintiff] ought to be afforded an opportunity to test [their] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Notwithstanding this permissive standard, courts will not allow amendment if "equitable considerations render [amendment] otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman*, 371 U.S. at 182). Those equitable considerations include "(1) undue

delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment." *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 209 (D.N.J. 2021) (citing *Foman*, 371 U.S. at 178). The "touchstone" of a leave to amend analysis is prejudice to the non-moving party. *Arthur*, 434 F.3d at 204 (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).

Defendants bear a "heavy burden" of demonstrating that Plaintiff's proposed amendments are futile. *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). "The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Marjam Supply Co. v. Firestone Bldg. Pros. Co., LLC*, No. 11-7119, 2014 WL 1343075, at *3 (D.N.J. Apr. 4, 2014); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) ("[A]n amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." (internal citation and quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007)). A district court must "accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). While the complaint "does not need detailed factual allegations," those factual allegations taken together "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A proposed amended pleading may also be found futile if barred by the statute of limitations. *See Arab Afr. Int'l Bank*, 10 F.3d at

175 (affirming district court's finding that amendment would be futile because claims were time-barred); *see also Waters v. Shoprite Supermarkets, Inc.*, No. 10-2986, 2011 WL 6934847, at *2 (D.N.J. Dec. 30, 2011).

## III.    **DISCUSSION**

While Roderick does not oppose Plaintiff's motion to amend, (ECF No. 58), Seward and Eric separately oppose the motion on grounds of prejudice, undue delay, and futility, (ECF Nos. 56, 57). Both argue that Plaintiff has repeatedly and belatedly amended her pleading, resulting in undue delay and prejudice, in a way that suggests dilatory motive. Both also assert that the claims against them—all torts arising under common law—are time barred and that Count Six (the child endangerment claim) is not a legally cognizable cause of action. Eric additionally argues that New York's statute of limitations, rather than New Jersey's, applies to Plaintiff's claims against him and similarly bars her claims. Moreover, Eric argues that even if Plaintiff is not time-barred, the PSAC's claims as against him are still too vague and should be dismissed.

Because granting Plaintiff leave to file her PSAC would moot Seward's and Eric's Motions to Dismiss, the Court begins its analysis with each Defendant's arguments opposing amendment. As to the Defendant-specific claims for which the Court finds that amendment would be futile, the Court will further consider whether dismissal of the operative pleading (the FAC) is appropriate.

### A.    PREJUDICE, UNDUE DELAY, BAD FAITH, AND DILATORY MOTIVE

Seward and Eric make a series of overlapping arguments related to the several pleadings Plaintiff has filed in this matter and her attempts to amend her complaint, from which Defendants aver bad faith, dilatory motive, undue delay, and ultimately, prejudice to themselves. (ECF No. 56 at 6–7; ECF No. 57 at 16–19.)

The Court does not find bad faith or dilatory motive in Plaintiff's conduct thus far. In response to Defendants' original motions to dismiss the Complaint on April 27, 2022, (ECF Nos. 21, 23, 24, 25), Plaintiff filed an opposition brief acknowledging the jurisdictional pleading error and requesting to file an amended pleading correcting it. (ECF No. 28 at 10.) While a procedurally improper way to request to amend her pleading, this approach does not evidence the bad faith that Eric suggests. (ECF No. 57 at 18.) Once the Court dismissed the Complaint on jurisdictional grounds and allowed Plaintiff leave to file a jurisdictionally-sound complaint, (ECF No. 37), Plaintiff did so within eight (8) days, (ECF No. 39.) In accordance with the Court's instructions, Plaintiff simultaneously filed a letter requesting to file a motion seeking leave to file the instant second amended complaint. (ECF No. 40.) Plaintiff explains that this simultaneous filing—rather than only seeking leave to file a motion to amend as Eric suggests, (ECF No. 57 at 18)—was "to ensure that, in the event that Magistrate Judge Goodman were to deny leave to file the Motion to Amend, Plaintiff would not have allowed the fourteen-day period to lapse without the filing of a jurisdictionally sound complaint," (ECF No. 60 at *3). Plaintiff's letter request complied with the Court's instruction, (ECF No. 38), and was subsequently granted, (ECF No. 52). Apart from attempting to amend her complaint in her opposition brief to a motion to dismiss, Plaintiff has substantively complied with the Court's procedural and temporal requirements. While it would undoubtedly have been preferable for the Court and Defendants had Plaintiff included such specificity in the first instance, the Court does not find any inherent bad faith or dilatory motive in her actions. Given that the amendments were made within the time constraints imposed by the Court, the Court does not find that amendment would create an "unwarranted burden on the court." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

Nor does the Court find undue delay in the manner in which Plaintiff has litigated her pleading's amendment. Although this is Plaintiff's Proposed Second Amended Complaint, the Court limited the changes Plaintiff could effect in her First Amended Complaint to correcting the diversity allegations. Thus it is not clear what "off-ramps" Seward contends Plaintiff should have taken to amend her complaint. (ECF No. 56 at 7.) The extreme gap between the events and the initiation of this litigation, while certainly constituting a delay, flows not from the motion practice in this matter but rather the inherent gap between the alleged conduct and the initiation of the litigation—which, as discussed below, resulted from the legislature's decision to revive the window for sexual assault claims by minors, and permit decades-old claims to be brought. *See* Section III.B.a.i, *infra*.

Nor will the delay and substance of the proposed amendment create undue prejudice or impose an "unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d at 868. The added factual allegations as to Seward and Eric remain within the same underlying narrative, only adding detail in response to Defendants' claims that the Complaint lacked specificity. As to the legal liability, Eric and Seward were removed from the CSAA violation (Count One) and Seward was added to the endangerment claim (Count Six). These alterations were relatively minor in the context of the overall litigation that the Court finds no unfair surprise or undue burden by this amendment. To the extent Defendants complain of the two motions to dismiss they have filed in the matter, (ECF No. 56 at 7; ECF No. 57 at 16–17), Defendants could have avoided this motion practice. In compliance with the Court's order, (ECF No. 38), Plaintiff filed her request to file a motion to amend on December 21, 2022, (ECF No. 40). Rather than waiting for a decision on Plaintiff's request and her expected motion to amend that would follow, Defendants opted to re-file their Motions to Dismiss against the Amended Complaint.

### B.    FUTILITY

Because the PSAC was not submitted in bad faith and its filing will not prejudice Defendants, whether Plaintiff may file her proposed Second Amended Complaint will turn on its futility. Although Seward and Eric make some overlapping arguments, the Court will separately analyze the arguments each has raised under the motion to dismiss standard to determine whether either "proposed amendment is frivolous or advances a claim that is legally insufficient on its face." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citing *Miller v. Beneficial Mgmt. Corp.*, 844 F. Supp. 990, 1001 (D.N.J. 1993)).

#### a.    Claims Against Seward

The PSAC adds several details about Seward's alleged sexual abuse, (PSAC ¶¶ 11–13), and adds Seward to the child welfare endangerment claim, which was previously only alleged against Eric, (*id.* ¶¶ 79–83). In opposing amendment, Seward does not contend that Plaintiff has failed to state a claim on any cause of action pursuant to Rule 12(b)(6). As in his Motion to Dismiss, Seward argues that Plaintiff's common law claims (Counts Two, Three, and Five) are futile because they are time barred. (ECF No. 45-1 at 7–8; ECF No. 56 at 8–9.) With respect to Count Six, Seward also argues that New Jersey law does not recognize a private cause of action for "endangering the welfare of children." (ECF No. 56 at 9–11.)

##### i.    *Statute of Limitations*

Seward argues that Counts Two, Three, and Five are time-barred because they are subject to New Jersey's two-year statute of limitations for personal injury actions, as the underlying events occurred in the 1970s, and Plaintiff did not file suit until 2021. (*Id.* at 8–9.) The PSAC recognizes the statute of limitations vulnerability of Plaintiff's claims and notes that the case was filed within New Jersey's retroactive window for survivors of sexual abuse, which extended the statute of

limitations to November 30, 2021 (the day Plaintiff filed her Complaint). (PSAC ¶¶ 40–41; ECF No. 59 at *55.) Seward responds that only claims brought pursuant to the Child Sexual Abuse Act ("CSAA") qualify for the retroactive window, and the PSAC deleted Seward from the Defendants against whom Plaintiff's CSAA claim is alleged. (ECF No. 56 at 8–9.)

The CSAA provides an extended window for a plaintiff to file suit for sexual misconduct-related claims that runs "within 37 years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later." N.J. Stat. Ann. § 2A:14-2a(a)(1).[3] In May of 2019, the New Jersey Legislature enacted an extended two-year revival window, running from December 1, 2019 to November 30, 2021, during which plaintiffs may bring otherwise time-barred claims flowing from certain sexual misconduct. The statute states:

> Notwithstanding the statute of limitations provisions of [Section 2A:14-2a], . . . or any other statute, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in [N.J. State. Ann. 2A:30B-2], or sexual abuse as defined in [N.J. Stat. Ann. 2A:61B-1], that occurred prior to the effective date . . . , and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

N.J. Stat. Ann. § 2A:14-2b(a). The law became effective on December 1, 2019, and therefore the two-year window ran through November 30, 2021. Plaintiff's suit was filed on the last day of the revival period. (ECF No. 1.)

When asked to interpret a statutory provision without guidance from a state's highest court, a court's task "is to predict how the [New Jersey] Supreme Court would rule on this question of

---

[3] Here, there is no dispute that Plaintiff—who turned eighteen (18) in 1977, (PSAC ¶ 3), and alleges discovery of the injury in 1993, (*id.* ¶ 47)—cannot bring claims pursuant to the extended statute of limitations available under N.J. Stat. Ann. § 2A:14-2a.

New Jersey law." *See Roma v. United States*, 344 F.3d 352, 361 (3d Cir. 2003) (citing *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996)). The court reviews the "plain language" of a statute for "persuasive indication" to make this determination. *See id.* at 362. The court may also look to state intermediate appellate courts and federal courts interpreting that state's law, as well as "analogous decisions, considered dicta, scholarly works, and any other reliable data" that would inform how the state's highest court would decide the issue. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216–17 (3d Cir. 2010) (citation omitted). Because the New Jersey Supreme Court has not interpreted the relevant issues under Sections 2A:14-2a or 2A:14-2b, the Court will make its own determinations how that Court would resolve the statutory interpretation questions presented here.

Seward's briefs do not mention Section 2A:14-2b's two-year revival window, which is explicitly invoked in the proposed amended pleading. (*See* PSAC ¶¶ 40–41.) Rather, Seward discusses N.J. Stat. Ann. § 2A:14-2(a), which establishes a general two-year statute of limitations for tort actions, as well as N.J. Stat. Ann. § 2A:61B-1(b), which states when a civil claim for sexual abuse accrues. (ECF No. 45-1 at 7–8; ECF No. 56 at 8.) However, the general statute of limitations for tort actions was explicitly trumped by Section 2A:14-2b, as the law notes that the two-year revival window applies "[n]otwithstanding the statute of limitations provisions" contained in Section 2A:14-2a, N.J. Stat. Ann. § 2A:14-2b(a).

The Court thus considers whether the two-year revival window, which was added to the CSAA in 2019, can apply to claims brought without a concurrent CSAA claim against the same defendant. (ECF No. 56 at 8.) The Court finds that the PSAC's claims against Seward, which do not include a claim under the CSAA, nonetheless qualify for New Jersey's two-year revival window.

The statute's unambiguous language provides the two-year revival window for "an action at law for an injury *resulting from* . . . sexual abuse as defined in [Section 2A:61B-1] . . . ." N.J. Stat. Ann. § 2A:14-2b(a) (emphasis added). Section 2A:61B-1 defines "sexual abuse" as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult." § 2A:61B-1(a)(1). Sexual contact is further defined as "intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of sexually arousing or sexually gratifying the actor." § 2A:61B-1(a)(2). "Intimate parts" refer to "sexual organs, genital area, anal area, inner thigh, groin, buttock, or breast of a person." § 2A:61B-1(a)(4).

Here, Plaintiff has adequately alleged sexual abuse by, at least, Hillary, Roderick, and Eric, under Section 2A:61B-1. (PSAC ¶¶ 12–21, 23.)[4] While Seward's conduct as alleged may not meet the statutory definition of sexual abuse, that is not a requirement to take advantage of the two-year revival window. The revival window's "resulting from" language makes clear that a claim against a defendant need not constitute sexual abuse under Section 2A:61B-1 in order to qualify. *Burrage v. United States*, 571 U.S. 204, 210–11 (2014) ("A thing 'results' when it '[a]rise[s] as an effect, issue, or outcome from some action, process or design.'" (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993))). Thus, the Court finds no ambiguity in the statute, and the fact that Plaintiff's claims against Seward *resulted from* the sexual abuse allegedly perpetrated by Hillary and Roderick, (PSAC ¶¶ 11–13), is sufficient.

---

[4] Seward's conduct may also qualify directly as sexual abuse under Section 2A:61B-1 to the extent that a "person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse." N.J. Stat. Ann. § 2A:61B-1(a)(1). While the PSAC alleges that some of Plaintiff's step-brothers stood *in loco parentis*, (PSAC ¶¶ 12, 80), the parties do not address this claim, or indeed, discuss Section 2A:61B-1(a)(1) in any depth. Because of their silence on this point and the fact that the Court's conclusion on the statute of limitations question is the same regardless of whether Seward's conduct walls within the statutory definition of sexual abuse, the Court will likewise not discuss Plaintiff's *in loco parentis* theory.

Other Courts within this District interpreting Section 2A:14-2b have reached the same outcome. In *Doe v. Princeton University*, the Honorable Georgette Castner found that a plaintiff's claims for violation of New Jersey's Law Against Discrimination ("NJLAD") fell within the two-year revival window. No. 21-20264, 2023 WL 2264460, at *1–3 (D.N.J. Feb. 28, 2023). The defendant university, which allegedly failed to take remedial action against another student who had sexually assaulted and raped the plaintiff, argued that Section 2A:14-2b does not apply to "actions against third parties for conduct occurring after the sexual assault" nor to "all injuries remotely related to sexual assault or abuse." *Id.* at *3 (citing parties' briefing). Judge Castner rejected the defendant's interpretation, focusing on the New Jersey Legislature's choice to apply the window to claims "resulting from the commission of a sexual assault" rather than claims "directly related to the sexual offense, or against the actual perpetrator of the offense" as it could have. *Id.* at *4. Because the plaintiff's claims "ar[ose] from Defendant's alleged misconduct following and in response to Plaintiff's report of sexual assault and rape," the claims fell within the two-year revival window. *Id.*

Likewise in *Doe v. Walgreen National Corporation*, the Honorable Brian R. Martinotti found that a plaintiff's state law claims against her former employer, based on unwanted advances and sexual assault committed by her supervisor, even absent a viable CSAA claim, fell within the two-year window. No. 21-20236, 2022 WL 16552820, at *2–4 (D.N.J. Oct. 31, 2022). Judge Martinotti found that the window covers actions "'resulting from the commission of sexual assault,' including the alleged assault underlying each of Plaintiff's claims in this case." *Id.* at *4 (quoting N.J. Stat. Ann. § 2A:14-2b(a)). The Court arrived at this conclusion notwithstanding the fact that plaintiff's claims were against the *store employee*, rather than the sole defendant in the

matter, her employer. *Id.* at *4.[5] Judge Martinotti denied the employer's motion with respect to its statute of limitations defense. *Id.*; *see also Bernard v. Cosby*, 648 F. Supp. 3d 558, 568 (D.N.J. 2023) ("The Court is not alone in finding that causes of action defined within the CSAA are not required to trigger the revival window.").

Seward relies, (ECF No. 56 at 8), on a footnote from the New Jersey Supreme Court's decision in *Hardwicke v. American Boychoir School* disclaiming the lower court's suggestion that "the liberal tolling provisions of [Section 2A:61B–1(b)] apply to common-law causes of action based on conduct not within the definition of sexual abuse found in the CSAA . . . ." 902 A.2d 900, 919 n.12 (N.J. 2006) (citation omitted). However, the *Hardwicke* footnote does not suggest, let alone compel, the interpretation of the two-year revival window Seward seeks. *Hardwicke* dealt with the CSAA's discovery provision contained in 2A:61B–1(b), relevant to when a CSAA claim accrues. *Id.* at 919. That footnote does not apply to the instant action because, as noted above, Plaintiff has, at least facially, alleged conduct constituting "sexual abuse" under the CSAA. *See* N.J. Stat. Ann. § 2A:61B-1(a)(1). In any event, *Hardwicke* was handed down in 2006 and was decided well before the Legislature enacted the two-year revival window, which changed the statutory landscape in effect when *Hardwicke* was decided. *See Doe v. Est. of C.V.O.*, 303 A.3d 678, 690 (N.J. Super. Ct. App. Div. 2023) ("We recognize the Court decided *Hardwicke* before the landmark CVA enactment; regardless, the Court did not hold that timely-filed common law claims were barred if a cognizable CSAA claim did not exist."); *Bernard*, 648 F. Supp. 3d at 568 (rejecting the defendant's reliance on footnote twelve of *Hardwicke* because New Jersey

---

[5] While Plaintiff originally pled a CSAA violation against Walmart, *id.* at *2, Judge Martinotti also held that the complaint failed to state a claim under the CSAA, *id.* at *4–5. Therefore, although the Court did not explicitly address the applicability of the two-year revival window to claims absent a concurrent CSAA claim, Judge Martinotti's holding that the two-year revival window applied to the plaintiff's claims implicitly required finding that the plaintiff's common law and NJLAD claims against Walmart could proceed even absent a viable CSAA claim.

subsequently "amended the CSAA [] or otherwise changed multiple statutes and created the revival window expressly applicable to 'Child and Adult Victims.'").[6]

Thus, the Court concludes that the PSAC's claims against Seward are timely because they fall within the two-year revival window, despite the fact that no CSAA claim is alleged against Seward.[7]

          ii.          *Cause of Action for Child Endangerment*

With respect to Count Six, Seward argues that New Jersey law does not recognize a private cause of action for child endangerment. (ECF No. 56 at 9–11.) Seward argues that a state statute requiring reporting of child endangerment, like state statutes criminalizing child endangerment, does not create a private right of action. (*Id.*) In support, Plaintiff cites *J.S. v. R.T.H.*, 714 A.2d 924 (N.J. 1998) to argue that "the statute does **not** create a duty of care or a basis for civil liability." (*Id.* at 10 (emphasis in original).) Plaintiff agrees that the state reporting statute does not, standing alone, create a cause of action. (ECF No. 59 at *6–7.) However, Plaintiff also cites *J.S. v. R.T.H.* to argue that Plaintiff may still rely on reporting statutes in support of her claim that Seward owed Plaintiff a duty of care, which is all Plaintiff purports the PSAC does. (*Id.*)

---

[6] In her PSAC and Motion to Amend, Plaintiff alleges other bases for why her claims are not time-barred, including that her discovery of the harm was delayed for an unspecified period and that she was unable to pursue her rights because of her mental state, insanity, or duress. (PSAC ¶ 40.) However, because the Court finds that Section 2A:14-2b permits Plaintiff's claim, and because Seward does not address those additional bases, the Court need not consider them.

Plaintiff notes that the relevant date for applying New Jersey's statute of limitations is the date she filed her original Complaint, rather than the date she filed the PSAC, based on New Jersey principles of substantial compliance and equitable tolling. (ECF No. 54-1 at *7–8.) Neither Seward nor Eric disagrees, and the Court therefore looks to the date of the Complaint's filing to determine the PSAC's timeliness. *See* Fed. R. Civ. P. 15 ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct . . . in the original pleading."); *see also Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 290 (D.N.J. 2012).

[7] Seward's statute of limitations arguments are limited to Counts Two, Three, and Five and do not mention Count Six. (ECF No. 56 at 8–9.) However, the Court's analysis above applies equally to other common law claims, which includes Count Six.

The Court begins with the New Jersey Supreme Court case relied on by both parties. In *J.S. v. R.T.H.*, the plaintiffs, two underage sisters who were sexually abused by their adult neighbor, brought a negligence action against the neighbor and his spouse. 714 A.2d 924, 926 (N.J. 1998). The defendant spouse conceded that she "knew or should have known of her husband's proclivities/propensities" but challenged plaintiffs' claim that she owed them a duty, such that she could be found negligent for the girls' injuries. *Id.* at 928. The Court held that a spouse "has a duty of care to take reasonable steps to prevent or warn of the harm" when the spouse "has actual knowledge or special reason to know of the likelihood of his or her spouse engaging in sexually abusive behavior . . . ." *Id.* at 935. In determining whether to impose a duty, the Court weighed a myriad of policy considerations and the relevant state statutes, concluding that the state legislature "has dealt comprehensively with the subject of child abuse and has enacted a plethora of statutes designed to prevent the sexual abuse of children." *Id.* at 930–31.

Specifically, the Court discussed N.J. Stat. Ann. § 9:6-8.10, *id.* at 931—the same statute the PSAC cites in Count Six in support of its claim that Seward owed Plaintiff a duty, (PSAC ¶¶ 80–81). That statute states that "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse, including sexual abuse, or acts of child abuse shall report the same immediately to the Division of Child Protection and Permanency." N.J. Stat. Ann. § 9:6-8.10. In considering this reporting statute and others, the Court held it was "obvious that the Legislature, in providing sweeping statutory protections designed to protect children and to curb child abuse, did not intend to foreclose civil remedies." *J.S.*, 714 A.2d at 933. The Court continued:

> [W]e do not conclude that the Legislature intended that the child-abuse reporting statute constitute an independent basis for civil liability or that its violation constitute negligence per se. Nevertheless, because the protections provided, the evils addressed, and the obligations imposed by the reporting statute parallel those that would be relevant in recognizing the existence of a duty as a

> basis for a civil remedy, we determine that a violation of the statute
> may constitute evidence of negligence in circumstances such as
> those presented in this case.

*Id.* at 934. Thus, while the Court declined to recognize an independent cause of action for failure to report sexual abuse, it held that a plaintiff could rely on the statute to show the existence of a duty in a negligence claim.

A plain reading of the PSAC makes clear that Plaintiff does not bring a cause of action *pursuant to* Section 9:6-8.10 but rather cites the statute in support of her contention that Seward "had a duty to protect the children in [his] care, specifically K.S.D. and her sister, and to report Hillary Ryan and Roderick Ryan, pursuant to law, *including, but not limited to*, the duty imposed by N.J.S.A. 9:6-8.10 et seq., and its predecessor statute." (PSAC ¶ 80 (emphasis added).) Thus, Seward's reliance on the principle that various New Jersey civil and criminal child abuse statutes do not create causes of action, (ECF No. 56 at 10–11), although well-established,[8] misses the point when Plaintiff does not claim that Count Six arises under, or is totally dependent on, any particular statute. New Jersey's intermediate appellate courts presented with the question have left the door open to whether Section 9:6-8.10 can be cited in support of a negligence claim. *See M.M. v. Atl. Health Sys., Inc.*, No. A-2218-22, 2023 WL 5608960, at *4 (N.J. Super. Ct. App. Div. Aug. 30, 2023) ("We express no opinion as to whether plaintiff has a viable civil right of action against [a pediatrician] based on her purported failure to report [a child abuser] pursuant to N.J.S.A. 9:6-8.10."); *Child M. v. Fennes*, No. A-0873-15T2, 2016 WL 4473253, at *6 (N.J. Super. Ct. App. Div. Aug. 25, 2016) ("Although [a school's] breach of its duties under N.J.S.A. 9:6-8.10 and N.J.A.C. 6A:9-17.4 does not constitute negligence per se or create a private cause of action, it may

---

[8] *See, e.g., Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *6 n.10 (D.N.J. Jan. 17, 2020) (collecting cases for the proposition that "Plaintiff has no private cause of action for standalone claims under state criminal law"); *E.K. v. Massaro*, No. 12-2464, 2013 WL 5539357, at *6 (D.N.J. Oct. 7, 2013); *M.K. ex rel. D.K. v. Hillsdale Bd. of Educ.*, No. 06-1438, 2006 WL 2067177, at *2 (D.N.J. July 20, 2006).

constitute evidence of negligence under the circumstances presented here."). Because Seward's argument is limited to whether Section 9:6-8.10 creates an independent cause of action and does not address his duty alleged generally under Count Six, the Court follows suit. Accordingly, the Court denies Seward's motion to dismiss Count Six.

\* \* \*

For the reasons explained above, the Court disagrees with Seward's two arguments for why permitting the PSAC would be futile. Therefore, Plaintiff will be permitted to file her PSAC with the claims against Seward.

### b.    Claims Against Eric

The only change between the FAC and the PSAC with respect to Eric is the addition of details about the single instance of specific sexual abuse committed by Eric against Plaintiff. (PSAC ¶ 23.), Therefore, Eric's arguments that amendment is futile because Plaintiff's claims against him are time-barred, (ECF No. 57 at 6–14), Count Six is not cognizable as an independent cause of action, (*id.* at 14–16), and the FAC fails to plead facts that could support any claim against him, (*id.* at 5), mirror his arguments in his Motion to Dismiss the FAC, (ECF No. 48-1).

### i.    *Statute of Limitations*

Like Seward, Eric argues that Plaintiff's claims are time-barred. (*Id.* at 6–13.) Unlike Seward, Eric contends that New York's statute of limitations, rather than New Jersey's, applies to Plaintiff's claims against him. (*Id.* at 6–7.) Eric argues that New York's own two-year revival window extended only to August 14, 2021, several months prior to Plaintiff initiating this action. (*Id.* at 9–10.) Plaintiff disagrees that New York's statute of limitations should apply but contends that in any event, the statute was tolled by the New York Governor's executive orders during the COVID-19 pandemic. (ECF No. 60 at \*4–6.)

To resolve Plaintiff's motion, the Court first determines whether New York or New Jersey law applies. When a court hears a case pursuant to its diversity jurisdiction, it applies the forum state's choice of law rules for determining which state's statute of limitations apply, *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013), which here is New Jersey law. This Court's application of New Jersey's choice of law rules is guided by the New Jersey Supreme Court's decision in *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207 (N.J. 2017).

### 1.    New York Statute of Limitations

The Court's first task is to determine whether there is actual conflict between the fora's laws. *Id.* at 216 (citing *Rowe v. Hoffmann–La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007)). Conflict arises "when choosing between one or another state's statute of limitations is outcome determinative." *Id.* (citation omitted). Having already determined in Section III.B.a.i, *supra*, that Plaintiff's claims are timely under New Jersey law, the Court now tests how her claims against Eric would fair under New York law.

New York's Child Victims Act ("CVA") "created a two-year window for filing previously time-barred claims" stemming from certain sexual offenses against children. *Wright v. State*, 221 A.D.3d 132, 134 (N.Y. App. Div. 2023). The relevant provision states:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . , every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions . . . for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined [by statute] committed against a child less than eighteen years of age . . . , which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y. C.P.L.R. 214-g. As the Section's effective date was February 14, 2019, the CVA's two-year revival window ended on August 14, 2021. *See Samuel W. v. United Synagogue of Conservative Judaism*, 194 N.Y.S.3d 25 (N.J. App. Div. 2023). Thus, on a straightforward application of the statute, Plaintiff's Complaint, filed on November 30, 2021, was filed over three months too late to qualify for New York's revival window.

However, Plaintiff contends that her Complaint was timely under New York law because a series of Executive Orders issued by New York's Governor in 2020, at the height of the COVID-19 pandemic, tolled the statute of limitations. (ECF No. 60 at *5.) Plaintiff does not articulate exactly how the executive orders tolled the statute, or what she believes the correct tolling date would be, but simply that New York's revival window was pushed back enough for her November 30, 2021 Complaint to be timely. (*Id.*) Eric responds that the executive orders did not toll the CVA's statute of limitations, and that even if they did, they at most extended it by ninety (90) days, under which Plaintiff's Complaint was still filed out of time. (ECF No. 57 at 10–12; *see also* ECF No. 48-1 at 7.)

For the purpose of understanding how the New York executive orders affect revival window, a brief timeline is necessary. The CVA was signed into law on February 14, 2019 and opened a *one*-year window beginning six months after the law was enacted, which would revive claims filed between August 14, 2019 and August 14, 2020. *See M.C. v. State*, 163 N.Y.S.3d 741, 757 (N.Y. Ct. Cl. 2022) (discussing history of CVA's amendment). After the onset of the COVID-19 pandemic, Governor Cuomo signed an executive order "toll[ing]" "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state . . . ." N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8 (Mar. 20, 2020). Thereafter, the Governor issued a series of orders tolling the

statute of limitations in thirty-day increments, through until August 5, 2020.[9] On August 3, 2020, New York amended the CVA to extend the revival window one additional year, until August 14, 2021. *See* N.Y. C.P.L.R. 214-g. After passage of the CVA amendment, Governor Cuomo continued to issue executive orders that tolled the statute of limitations in thirty-day increments, through until November 3, 2020.[10]

During the tolling period covered by these subsequent executive orders—from August 5 to November 3, 2020—ninety (90) days elapsed. *See also M.C.*, 163 N.Y.S.3d at 757 ("[T]he executive orders issued by Governor Cuomo after the CVA extension was passed apply and toll the deadline for the commencement of CVA claims for 90 days.").[11] The executive orders therefore tolled the close of the CVA's revival window for ninety (90) days, from August 14, 2021 until November 12, 2021. Because Plaintiff's claims against Eric were filed on November 30, 2021— over two weeks after the tolled statute of limitations expired—Plaintiff's claims against Eric would be barred under New York law.

Because Plaintiff's claim against Eric are timely under New Jersey law but untimely under New York law, a conflict exists.

---

[9] *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.14 (Apr. 7, 2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.28 (May 7, 2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.38 (June 6, 2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.48 (July 6, 2020).

[10] *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.55.1 (Aug. 6, 2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.60 (Sept. 4, 2020); N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.67 (Oct. 4, 2020).

[11] Eric argues that a separate executive order issued prior to the passage of the CVA amendment that extended the CVA's window by five months, N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.29 (May 8, 2020), precludes finding that the Governor's more general tolling orders did not apply to the CVA. (ECF No. 57 at 8–9, 12.) The Court finds nothing in the language of the CVA-specific amendment that would preclude the Governor's other tolling orders from applying to the CVA's two-year revival window after it was enacted. The few New York appellate courts to have considered the issue have reached the same result. *See Doe v. Archdiocese of New York*, 198 N.Y.S.3d 82, 83 (N.Y. App. Div. 2023) (endorsing *M.C.*'s finding that the Governor's executive orders tolled the statute of limitations in N.Y. C.P.L.R. 214–g); *Brash v. Richards*, 149 N.Y.S.3d 560, 563 (N.Y. App. Div. 2021) (finding that the Governor's executive orders tolled the statute of limitations).

2.    <u>Choice of Law Analysis</u>

Having found a conflict, the Court now turns to Section 142 of the Restatement (Second) of Conflict of Laws ("Section 142"), *McCarrell*, 153 A.3d at 210, pursuant to which a New Jersey court will "generally apply its statute of limitations" when it "has a substantial interest in the litigation," unless "exceptional circumstances would render that result unreasonable," *id.* at221–22; *see also Walters v. Safelite Fulfillment Inc.*, No. 21-2054, 2022 WL 15377887, at *3 (3d Cir. Oct. 27, 2022) (discussing *McCarrell*). In New Jersey:

> In general, unless the exceptional circumstances of the case make such a result unreasonable:
> (1) The forum will apply its own statute of limitations barring the claim.
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>     (a) maintenance of the claim would serve no substantial interest of the forum; and
>     (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

*McCarrell*, 153 A.3d at 221 (quoting Restatement (Second) of Conflict of Laws § 142). Put differently, while the "default rule" is that a New Jersey court "would apply its own statute of limitations," the default is subject to consideration of whether the suit would "serve a substantial interest of the State of New Jersey" and whether the competing state "has a more significant relationship to the parties" and claims. *Pazymino v. Portfolio Recovery Assocs., LLC*, No. 19-12259, 2022 WL 17668024, at *5 (D.N.J. Dec. 14, 2022).

Because New Jersey's statute of limitations would permit the claim while New York's would bar it, Section 142, Subsection 2 of the Second Restatement applies. Restatement (Second) of Conflict of Laws § 142(2). Here, the Court cannot find that New Jersey has "no substantial interest" in Plaintiff's tort claim against Eric, when Plaintiff's claims against Eric allegedly flow

from a series of incidents that occurred in the 1970s while all Defendants were living in New Jersey at the same home as Plaintiff. (PSAC ¶¶ 9–11, 22–23, 79–80.) Eric's attempts to distill the PSAC's allegations against him into a single paragraph, (ECF No. 57 at 6–7), regarding the allegation that he sexually assaulted Plaintiff at his apartment in New York in 1976, (PSAC ¶ 23), while reasonable, are ultimately unavailing. The Court agrees with Plaintiff that, at this still-early posture of the case, "while Eric's conduct physically took place in New York, it was the culmination of years of abuse commenced and carried out in New Jersey, often under the tacit supervision of Eric and Seward." (ECF No. 54-1 at *9.) Given the uncontested application of New Jersey's statute of limitations to Plaintiff's claims against the other Defendants, the Court finds no "exceptional circumstances" rendering application of the same state's limit to her claims against Eric. *See Yerkes v. Weiss*, No. 17-2493, 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018) ("Furthermore, the Court discerns no "exceptional circumstances" that would render the application of the New Jersey statute of limitations unreasonable." (cleaned up)).

New Jersey's interest is also served by related claims against different defendants being subject to the same limitations period. Indeed, the Court can find no example of a New Jersey court applying different states' statutes of limitations to the same set of claims, let alone to claims as related as those against each Defendant here. The cases Eric cites on this point, (ECF No. 48-1 at 5–6), are inapposite. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (conducting issue-by-issue analysis for *substantive* claims); G*insberg ex rel. Ginsberg v. Quest Diagnostics, Inc.*, 117 A.3d 200, 220 (N.J. Super. Ct. App. Div. 2015) (conducting defendant-by-defendant analysis for substantive claims).

Because the Court does not find that applying New Jersey's statute of limitations would serve no substantial interest, it need not reach the second prong to consider New York's

relationship to the claim. Because New Jersey's statute of limitations applies to Plaintiff's claims, for the reasons set forth in Section III.B.a.i, *supra*, Eric's statute of limitations arguments are denied as well.

> ii.          *Failure to State a Claim*

Eric raises the additional arguments that Count Six, Plaintiff's claim for child endangerment, is not cognizable as a claim at law, (ECF No. 57 at 14–16), and that the PSAC fails to state a claim against him, (*id.* at 6). Eric's argument on Count Six fails for the same reason Seward's does, as explained in Section III.B.a.ii, *supra*. The fact that N.J. Stat. Ann. § 9:6-8.10 does not create an independent cause of action does not mean that it cannot be relied on to support a defendant's duty to report child abuse.

Eric also generally argues that Plaintiff has failed to allege facts sufficient to support any of the multiple Counts against him. While Eric, like the other Defendants, may have a basis to move for dismissal of a few of the counts of the Second Amended Complaint against him, Eric's briefing on this point is insufficiently developed for the Court to consider. (*See* ECF No. 48-1 at 4–5; ECF No. 57 at 6.) The Court declines the invitation to develop Rule 12(b)(6) arguments on each Count of the PSAC in order to reach the merits of Eric's arguments. The Court further notes this was matter was filed in November 2021, over two years ago, and that Plaintiff's pleadings have survived two rounds of unsuccessful motions to dismiss. To date, no discovery has taken place, which is especially worrisome in light of the need in this case to develop facts regarding events that occurred approximately fifty years ago. This renders the need for discovery to commence all the more pressing, after which Defendants, in good faith, may move for summary judgment on any claim they contend should not go before a jury.

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Amend (ECF No. 54) is **GRANTED**. Seward's Motion to Dismiss (ECF No. 45) and Eric's Motion to Dismiss (ECF No. 48) are **DENIED** as moot. An appropriate Order accompanies this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: January 17, 2024